# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NATERA, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARCHERDX, INC., ARCHERDX, LLC, AND INVITAE CORPORATION <br><br> Defendants. | C.A. No. 20-cv-125-LPS <br> (Consolidated) <br><br> **FILED UNDER SEAL** |

## DEFENDANTS' JUNE 15, 2021 DISCOVERY DISPUTE LETTER

Dated: June 15, 2021

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
Kaitlin Paulson (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

*Attorneys for Defendants*

Dear Chief Jude Stark,

    Defendants ArcherDX, Inc., ArcherDX, LLC, and Invitae Corp. (together, "Archer" or "Defendants") write regarding discovery scheduling and several interrogatories.

## I. THE PARTIES' DISPUTES REGARDING DISCOVERY COORDINATION AND SCHEDULE

    The parties dispute whether discovery in the above-captioned matter ("the ArcherDX/Invitae matter") and the related matter *Natera, Inc. v. Genosity, Inc.*, Case No. 1:20-cv-01352-LPS ("the Genosity matter") should be coordinated. Discovery in these two cases undoubtedly should be coordinated and the schedules should be adjusted accordingly with a proposed trial date in spring of 2023. Even to the extent the Court determines that coordination of these two cases is unwarranted, the discovery schedule in the existing ArcherDX/Invitae matter is no longer feasible and requires modification independent of the schedule in the Genosity matter.

### A. Discovery In The ArcherDX/Invitae And Genosity Matters Should Be Coordinated

    As background, Genosity was an independent company that was an ArcherDX customer and was utilizing ArcherDX/Invitae products to provide laboratory testing services. After originally suing ArcherDX in January 2020, Natera sued Genosity nine months later in October 2020, ostensibly as a way of applying added pressure to ArcherDX. From the outset, Natera designated the Genosity matter as related to the ArcherDX/Invite matter. D.I. 1-2 in 20-cv-1352. Nevertheless, by delaying nine months before suing ArcherDX's customer, Natera created asynchrony between the original ArcherDX/Invitae suit and the suit against ArcherDX's customer. In April 2021, it was announced that Invitae would acquire Genosity, and shortly thereafter counsel for ArcherDX/Invitae were substituted as counsel for Genosity. Invitae's acquisition of Genosity closed on April 19, 2021, and Genosity is now a wholly-owned subsidiary of Invitae. As documented below, given the heavy substantive overlap between the ArcherDX/Invitae and Genosity matters, the only sensible path forward is to coordinate discovery. Any other result would lead to gross inefficiencies and risk inconsistent results.

    There is only one patent at issue in the Genosity matter. Natera asserts this very same patent in the ArcherDX/Invitae matter. Although Natera has asserted that the "products are not the same" in the Genosity and ArcherDX/Invitae matters, D.I. 218 at 2, this assertion reflects carefully chosen language that unfortunately fails to apprise the Court of the true relationship between the products at issue in the two cases. In the ArcherDX/Invitae case, Natera accuses a number of different testing kits that all utilize Archer's proprietary chemistry format known as "anchored multiplex PCR," or "AMP" for short. Natera says this in the first paragraph of its complaint. D.I. 116 ¶ 1 ("The Accused Products all use Archer's Anchored Multiplex PCR ('AMP') on nucleic acids.").[1] Natera accuses the exact same thing of infringing in the Genosity case. As Natera states in the opening sentences of its complaint against Genosity, the "Accused Products use **ArcherDX, Inc.'s…ctDNA chemistry** and region-specific primers, which infringe

---

[1] Curiously, Natera's counsel previously asserted in a discovery hearing that "we haven't accused anything called an AMP product as the infringing product. There are exactly six specific infringing products, none of which are the AMP products." D.I. 179 at 19:16-19; *see also id.* at 24:2-5.

1

the '220 Patent." D.I. 1 in 20-cv-01352 ¶ 1; *see also id.* ¶¶ 42-64 (alleging infringement through the use of "Archer ctDNA chemistry"). All of Natera's allegations in the Genosity case are directed to Archer's AMP chemistry, as shown, for instance, in the example below:

> On information and belief, by using the *Archer ctDNA chemistry*, including in ArcherDX's VariantPlex Myeloid Kit used in Genosity's Myeloid NGS Molecular Profile test, Genosity ligates adaptors to cell-free DNA. The Archer ctDNA chemistry includes "ligating an adapter molecule to the starting cDNA or DNA fragments prior to PCR amplification." Ex. 9 (Technical Note, *The Use of Molecular Barcodes in Anchored Multiplex PCR*), at 1 (emphasis added).

D.I. 1 in 20-cv-1352 ¶ 41. Moreover, the primary pieces of evidence Natera relies upon throughout its Complaint in the Genosity case are videos from the *ArcherDX* website that describe AMP. *See, e.g., id.* ¶¶ 42-43, 46-47, 54-55. Underscoring the overlap in Accused Products, Natera uses the exact same figures and virtually the same verbiage for its infringement accusations in both the ArcherDX/Invitae and Genosity complaint. *Compare, e.g.,* D.I. 116 ¶¶ 86-91, 104, 106-07, 111, 115 *with* D.I. 1 in 20-cv-01352 ¶¶ 42-47, 54-56, 61, 64.

In sum, both the ArcherDX/Invitae and Genosity matters involve the same patent, the same family of products, affiliated companies, and the same counsel, although there is some truth to Natera's argument that the Genosity matter will have unique issues. They will involve the same types of documents, overlapping witnesses, and overlapping legal and factual issues. Natera cannot deny this. It has even served a subpoena on Genosity in the ArcherDX/Invitae matter, which drives home the risk of duplicative efforts. The foregoing are precisely the circumstances that warrant case coordination, absent which there will be excessive duplicative discovery and potentially inconsistent results. Such coordination should be effectuated now. While there has been a claim construction hearing in the ArcherDX/Invitae matter, the Court has not yet issued a claim construction ruling and no depositions have been taken. In fact, the parties did not even serve deposition notices until the Friday before the Memorial Day holiday. Thus, the ArcherDX/Invitae matter is still at a stage where it sensible for the unique issues related to the Genosity matter (for example potential technical issues, damages-related issues and discovery of Genosity-specific witnesses) to be caught up with the ArcherDX/Invitae matter. While this will require an adjustment of the trial date, the benefits of coordination far outweigh any illusory harm complained of by Natera.

According to Natera, "a delay will severely prejudice Natera in a case where it is seeking permanent injunctive relief." D.I. 218 at 2. This is without merit. Natera allegedly made the inventions in its patents in the 2011 time frame, and ArcherDX's products have been on the market since 2014. It was not until January 27, 2020, however, that Natera filed suit. In the interim, Natera's inventors and highest-ranking officials became deeply familiar with ArcherDX and its products. [redacted]

2

[REDACTED]

Were this truly a situation where Natera would suffer harm due to slight delay, it would not have waited years and years to file suit against ArcherDX, not to mention just five weeks before the scheduled close of fact discovery to begin serving deposition notices. For the foregoing reasons, discovery in this case should be coordinated with the Genosity matter and the trial date adjusted to spring 2023.

### B. Even If Coordination Is Deemed Unwarranted, The Schedule In The Existing Case Should Be Modified

Even to the extent the Court deems coordination unwarranted, the case schedule in the ArcherDX/Invitae matter is simply no longer viable and at the very least should be adjusted. *See* D.I. 190 at 2. Fact discovery is set to close on July 9, 2021, yet no depositions have been scheduled. It was not until the Friday before the Memorial Day Holiday that the parties first served deposition notices for a total of 14 witnesses. The parties have served 30(b)(6) notices, but Natera is refusing to make witnesses available for several topics and the parties have not yet held the required meet and confer pursuant to the recently revised Rule 30. Moreover, while Natera has provided dates for some of its witnesses, and Defendants have begun providing dates for their witnesses, there are still numerous depositions on both sides that the parties have not even begun to discus, including the great bulk of the inventors on Natera's patents. Beyond this, counsel for ArcherDX/Invitae are scheduled for trial in July, a fact that substantially complicates scheduling.

The parties have met and conferred, and appear to close to agreement on a revised schedule, although Natera has demanded a full slate of depositions scheduled before confirming agreement. *See* Ex. 9. To the extent Natera maintains this position, it is unwarranted. Natera waited until just a couple of weeks ago to first request depositions. Natera's demand that Defendants' witnesses and their counsel immediately juggle their schedule and provide all deposition dates within a few days is unreasonable. Defendants will work in good faith with Natera to schedule depositions, but the schedule needs to be adjusted in the meantime.

### II. NATERA's REFUSAL TO RESPOND TO INTERROGATORIES 3-7

Almost eight months ago, Archer served Natera with interrogatories 3 through 7. *See* D.I. 71. Natera provided no substantive response, instead arguing that additional discovery was required before it could respond. *See* Ex. 10. Since then, Natera has not only failed to provide supplemental responses, but has also refused give a date certain by which it will provide such supplements. Following meet and confer, Natera proposed that it supplement its responses to interrogatories 3 through 6 by June 25, contingent on the schedule remaining intact. *See* Ex. 11. In the likely event the schedule changes, however, Natera refuses to commit to supplementation. Natera is obligated to provide substantive responses to these interrogatories in a timely manner. *See* Fed. R. Civ. P. 26(e). Archer requests that the Court compel Natera to supplement its responses to interrogatories 3 through 7.

                                                                                                          Respectfully submitted,

                                                                                                          /s/ Brian E. Farnan

                                                                                                          Brian E. Farnan

cc: Counsel of Record (Via E-Mail)