# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NATERA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ARCHERDX, INC., ARCHERDX, LLC, AND INVITAE CORPORATION<br><br>Defendants. | C.A. No. 20-cv-125-LPS<br>(Consolidated)<br><br>**FILED UNDER SEAL** |

## DEFENDANTS' SEPTEMBER 1, 2021 DISCOVERY DISPUTE LETTER

Dated: September 1, 2021

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
Kaitlin Paulson (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

*Attorneys for Defendants*

Dear Judge Stark,

Defendants ArcherDX, Inc., ArcherDX LLC, and Invitae Corp. (together, "Defendants") write regarding Natera, Inc.'s refusal to substantively respond to interrogatories, make an employee available for deposition, and to designate witnesses for deposition topics.

## I. INTERROGATORIES AND REQUESTS FOR ADMISSION

Defendants respectfully request the Court compel Natera to supplement its responses to Interrogatory Nos. 1, 18, 24, and 25 by September 18.

### A. Interrogatory No. 24 ("Specification Embodiments")

Natera refuses to substantively answer Interrogatory No. 24, which seeks the identification of "any single embodiment in the specification that you contend discloses each element of the claim as arranged in the claim" for each asserted claim of the '814, '172, '482, and '220 patents. Ex. 1. This request is plainly relevant to enablement and written description, and Natera does not claim otherwise.

Further, there is little to no additional burden to Natera here. Natera has (presumably) conducted an investigation into these very issues when responding to Defendants' requests for admission and *admitting* that the '814, '172, '482, and '220 patents "disclose[] at least a single embodiment that includes all claim limitations of claim 1." Ex. 2 at 16–21 (RFA Nos. 9, 10, 11, 13, respectively). Now, all that is required is an identification of these embodiments for the asserted claims in response to Interrogatory No. 24.

During a meet and confer, Natera initially agreed to supplement its response, but later refused to confirm the agreement in writing.

### B. Interrogatory Nos. 18, 25 ("Number of Loci" and "Asserted Patent Communications")

Interrogatory No. 18 requests that Natera identify "the factual and legal bases for any contention that the asserted claim includes an upper limit on the number of loci" for all of the patents-in-suit. Ex. 1. Interrogatory No. 25 requests that Natera describe Natera's "prior communications to Archer and/or Invitae regarding the patents-in-suit or related applications" including any alleged notice of the patents or infringement. *Id.* For both of these narrowly tailored interrogatories, Natera initially agreed to provide dates by which it would supplement its responses, but now has refused to provide a date in writing. Fact discovery is coming to a close, and it is time for Natera to respond.

### C. Request for Admission Nos. 2, 4, 25 and Interrogatory Nos. 1 and 16

Defendants request that Natera be ordered to explain its responses to RFA Nos. 2, 4, and 25. Ex. 2. In response to RFA Nos. 2 and 4, Natera denies that it did not invent sample indexes and nested PCR. As Defendants' have explained during claim construction, both of these are concepts that existed long before the patents-in-suit as Natera's own expert admitted. D.I. 177 at 19, B-3 ¶ 34. Yet, Natera has provided no explanation for its denials. As to RFA No. 25, Natera denied that none of the asserted claims require selection of primers to avoid primer side products. Natera, however, successfully opposed this very construction during claim construction. D.I. 243 at 5–6. Natera provides no explanation for its denial that would show how the asserted claims

would require such a selection after successfully arguing that the claims ***do not*** require this.

Natera is required to explain these denials at least in response to Interrogatory No. 16 which requests that Natera "state in detail each reason why [a] request was not answered with an unqualified admission." Ex. 1. Further, Natera is required to explain these denials in response to Interrogatory No. 1 which seeks, on a claim-by-claim and element-by-element basis, the development of the alleged invention of each claim. Ex. 3. If Natera is claiming that it invented sample indexes and nested PCR, and that it is related to the asserted claims, the Defendants are entitled to a full explanation of Natera's position. The same applies for RFA No. 25 as to any contention that the asserted claims require a specific selection of primers.[1] For these reasons, Defendants request that Natera be ordered to supplement its response to Interrogatory No. 1 to explain its RFA denials.

## II. NATERA REFUSES TO PRODUCE PATENT PROSECUTION EMPLOYEE FOR DEPOSITION

Defendants seek to depose Natera's current IP counsel, Anton Bokal, who prepared applications for the patents-in-suit and is currently involved in Natera's patent prosecution decisions. D.I. 263. Dr. Bokal's testimony is highly relevant to Defendants' prosecution laches defense. Significantly, Natera claims that it developed the claimed inventions in 2011 for four of the five patents-in-suit, but did not seek patent protection until 2019 and 2020. Thus, if Natera is taken at its word about when it allegedly made the claimed inventions, it engaged in nearly a decade-long delay. During this time, Natera was well aware of Defendants' products and technology. Ex. 4. For example, at least as early as 2016, Natera repeatedly purchased Defendants' products, and Natera employees were trained to use them. Exs. 5–9. Natera's leadership was aware of Defendants' technology at least as early as 2014 and was already discussing whether the technology infringed Natera's technology. Ex. 10.

The deposition of Dr. Bokal will allow Defendants to pursue this highly relevant line of inquiry. Indeed, it may be the only source of discovery Defendants can obtain regarding key issues, like Natera's decision to prosecute and timing of the prosecution.

Courts regularly permit the depositions of patent prosecution counsel where relevant to issues and defenses in a litigation, as is the case here. *See, e.g.*, *aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp.2d 770 (N.D. Ill. 2005); *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp.2d 340 (S.D.N.Y. 2002); *Environ Prods. Inc. v. Total Containment Inc.*, 41 U.S.P.Q.2d 1302 (E.D. Pa. 1996). Moreover, both this Court and the Federal Circuit have repeatedly allowed the deposition of patent prosecution counsel. *See, e.g.*, *Cornell Univ. v. Illumina, Inc.*, C. A. No. 10-433-LPS-MPT, at *13 (D. Del. May 27, 2016); *Neev v. Abbott Med. Optics, Inc.*, Civil No. 09-146 (RBK), at *14 (D. Del. Mar. 27, 2012); *Leviton Mfg. v. Universal Sec. Instruments*, 606 F.3d 1353, 1357 (Fed. Cir. 2010). For these reasons, Defendants request that Natera be ordered to make Dr. Bokal available for deposition.

---

[1] Natera initially responded to all 25 of Defendants' RFAs. Ex. 2. However, weeks later, Natera informed Defendants that Defendants served 5 too many RFAs. Because Natera responded to all 25 RFAs, it has waived its objection. Moreover, Natera cannot now cherry-pick which 20 RFAs it wishes to answer.

### III.     DEFENDANTS' RULE 30(B)(6) DEPOSITION TOPICS

For Defendants' deposition topics 23–25, 52–53, and 57–60, Defendants respectfully request the Court compel Natera to designate a witness or witnesses for the reasons set forth below.

#### A.     Defendants' Topics 52–53 ("Patent Prosecution Topics")

Topics 52–54 seek information relating to Natera's decision to prosecute the Asserted Patents, seeking, respectively, the facts and circumstances "relating to Your decision to prosecute the Asserted Patents," "the prosecution of the Asserted Patents," and "Your knowledge of the Accused Products and/or ArcherDX's AMP technology in connection with the prosecution of the Asserted Patents." Ex. 11. Natera refuses to provide witnesses for these topics. Exs. 12–13. Natera claimed that it had "already agreed to designate a witness to testify on topics related to the Asserted Patents" and about AMP. Ex. 13. The topics Natera cited, however, speak only to the Asserted Patents and AMP, and exclude all reference to Natera's decision to prosecute. *See, e.g.*, Ex. 14 (Topic 2: "The circumstances surrounding the development of the inventions claimed in the Asserted Patents"). The full scope of topics 52–54 are highly relevant to the litigation, including to Defendants' prosecution laches defense discussed above, the value of the patents, and Natera's decision to file patents on the technology. *See supra* Section II.

#### B.     Defendants' Topics 23–25 ("Licensing Topics")

Topic 23 seeks "[t]he negotiations leading to, and circumstances surrounding, each agreement with a Third Party involving each of the Asserted Patents." Ex. 14. Topic 24 seeks "[a]ll existing, previously existing, offered, or contemplated licenses concerning the Asserted Patents and related licensing information." *Id.* Topic 25 seeks "[t]he commercial relationship between You and every Third Party to which You have licensed, intend to license, have offered to license, or refused to license each of the Asserted Patents." *Id.*

Each one of these topics are plainly directly relevant to Natera's damages claim. Indeed, the first *Georgia-Pacific* factor asks the Court to consider the licensing of the patents-in-suit. All three Topics 23-25 are directly relevant to this factor as they involve agreements and licenses relating to the Asserted Patents. Natera has provided no basis to contend that these topics are not relevant to its damages case or that they are unduly burdensome.

#### C.     Defendants' Topics 57–60 ("Commercial Relationship Topics")

Topics 57–60 relate to, respectively, Natera's understanding of its commercial relationship with Archer, its purchases of ArcherDX products, knowledge of its registration and/or attendance at events where ArcherDX products or AMP were discussed, and knowledge of meetings with ArcherDX. Ex. 11. First, for Topics 57–58, Natera agreed to designate a witness only to testify on documents identified by Defendants. This response is not acceptable because Defendants seek Natera's corporate understanding of the relationship with ArcherDX, which is highly relevant to Defendants' prosecution laches defense. *See supra* Section II. Limiting the topics to certain documents is unduly prejudicial, preventing Defendants from pursuing this valid line of inquiry. Second, Natera refused to designate a witness for Topics 59–60 because it "would be unable to locate every instance" of the events discussed. Ex. 13. Yet "[t]he fear of not being able to locate every responsive event does not eviscerate Natera's obligation to at least conduct a reasonable investigation into a highly relevant, tailored topic and designate a witness." *Id.*

Respectfully submitted,

/s/ Michael J. Farnan

Michael J. Farnan

cc: Counsel of Record (Via E-Mail)

4