IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NATERA, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARCHERDX, INC., ARCHERDX, LLC, and INVITAE CORP., <br><br> Defendants. | C.A. No. 20-125-GBW (CONSOLIDATED) <br><br> UNSEALED 2/24/2023 |

## MEMORANDUM ORDER

Plaintiff Natera, Inc. ("Natera") filed suit against Defendants ArcherDX, Inc., ArcherDX LLC, and Invitae Corp. (collectively, "ArcherDX" or "Defendants") alleging infringement of United States Patent Nos. 10,538,814 (the "'814 patent"), 10,557,172 (the "'172 patent"), 10,590,482 (the "'482 patent"), 10,731,220 (the "'220 patent"), and 10,597,708 (the "'708 patent").[1] D.I. 1. The '814, '172, '482, and '220 patents (collectively, the "cfDNA patents") all disclose the use of a new form of polymerase chain reaction ("PCR") for amplification and high-throughput sequencing ("HTS") of cell-free deoxyribonucleic acid ("cfDNA").

Pending before the Court are Natera's motion for summary judgment on, *inter alia*, no unenforceability of the cfDNA patents due to prosecution laches, D.I. 429; and ArcherDX's motion for summary judgment on, *inter alia*, non-infringement of the '482, '172, and '814 patents.[2]

---

[1] The Court writes for the benefit of the parties and assumes their familiarity with this action.

[2] The Court ordered the parties to rank the grounds for summary judgment raised in their motions "with the understanding that once the Court denies summary judgment as to any single ground raised in Plaintiff's [or Defendants'] motion, the Court will not address any summary judgment grounds that were ranked after that ground." D.I. 463. Natera ranked "No Unenforceability Due to Prosecution Laches" first. D.I. 468. ArcherDX ranked "Non-Infringement of the '482, '172, and '814 Patents" first. D.I. 467.

1

D.I. 428. The Court heard oral argument on the parties' motions on January 24, 2023. D.I. 549. For the reasons explained below, the Court denies both motions.

## I. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that could lead a reasonable jury to find in favor of the nonmoving party." *Bletz v. Corrie*, 974 F.3d 306, 308 (3d Cir. 2020) (citation omitted). "The court must review the record as a whole, draw all reasonable inferences in favor of the nonmoving party, and must not 'weigh the evidence or make credibility determinations.'" *Id.* (citation omitted). The Court must enter summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [the non-moving] party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Celotex*, 477 U.S. at 322). The Federal Circuit "reviews a district court's grant of summary judgment under the law of the regional circuit, here the Third Circuit." *Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th 1069, 1075 (Fed. Cir. 2021) (citation omitted).

## II. DISCUSSION

### A. Natera's Motion for Summary Judgment of No Unenforceability Due to Prosecution Laches is Denied

Natera seeks summary judgment of no unenforceability due to prosecution laches arguing that ArcherDX failed to proffer evidence that Natera's delay, if any, in prosecuting the cfDNA patents was unreasonable and that such a delay resulted in prejudice to ArcherDX. D.I. 432 at 6. In response, ArcherDX contends that it presented ample evidence demonstrating that Natera's near-decade delay, in view of the totality of the circumstances, was unreasonable, and that there is

2

no dispute that ArcherDX had "intervening rights." D.I. 441 at 36, 41. At a minimum, ArcherDX asserts genuine issues of material fact exist on whether Natera's prosecution conduct constitutes an unreasonable and inexcusable delay. *Id.* at 43. Because there are genuine issues of material fact and a reasonable factfinder could find for ArcherDX, Natera's motion for summary judgment of no unenforceability due to prosecution laches is denied.

The doctrine of prosecution laches is an equitable defense "that may be applied to bar enforcement of patent claims that issued after an unreasonable and unexplained delay in prosecution even though the applicant complied with pertinent statutes and rules." *Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found.*, 277 F.3d 1361, 1363 (Fed. Cir. 2002) ("*Symbol I*"); *see also Hyatt v. Hirshfeld*, 998 F.3d 1347, 1359 (Fed. Cir. 2021) (citation omitted). A finding of prosecution laches renders the entire patent unenforceable. *See id.* Prosecution laches requires proving two elements: (1) "that the patentee's delay in prosecution was unreasonable and inexcusable under the totality of circumstances," and (2) "that the accused infringer suffered prejudice attributable to the delay." *Hyatt*, 998 F.3d at 1362 (citation omitted). In evaluating the reasonableness of a patentee's delay, the Court weighs the totality of the circumstances as a matter of equity as there are no bright line time limitations for determining the reasonableness of prosecution. *See Cordance Corp. v. Amazon.com*, 631 F. Supp. 2d 484, 491 (D. Del. 2009). To establish prejudice, "an accused infringer must show evidence of intervening rights, that is, that the accused infringer or others 'invested in, worked on, or used the claimed technology during the period of delay.'" *Hyatt*, 998 F.3d at 1362 (citation omitted). Importantly, concluding a patent is unenforceable because of prosecution laches is exceedingly rare. That is, the doctrine "should be used sparingly lest statutory provisions be unjustifiably vitiated. The doctrine should be applied

only in egregious cases of misuse of the statutory patent system." *Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found.*, 422 F.3d 1378, 1385 (Fed. Cir. 2005) ("*Symbol II*").

The cfDNA patents all claim priority to United States Patent Application No. 13/300,235 (the "'235 application"), which was filed on November 18, 2011, and published on October 25, 2012. D.I. 432 at 4. As illustrated in the chart below, Natera filed the applications that issued as the cfDNA patents approximately eight to nine years after filing the '235 application.

| Patent No. | Application Filing Date | Issue Date of Patent | Time Elapsed Since Filing of '235 Application |
|---|---|---|---|
| the '814 patent | April 30, 2019 | January 21, 2020 | Approximately 8 years, 2 months |
| the '172 patent | April 30, 2019 | February 11, 2020 | Approximately 8 years, 3 months |
| the '482 patent | April 30, 2019 | March 17, 2020 | Approximately 8 years, 4 months |
| the '220 patent | January 15, 2020 | August 4, 2020 | Approximately 8 years, 8 months |

*See* D.I. 432 at 7.

While it is undisputed that the total time prosecuting each of the cfDNA patents to issuance was less than one year, the period between filing of the '235 application until the issuance of Natera's last cfDNA patent is nearly nine years. Natera contends that such a delay is not unreasonable or inexcusable, analogizing to other cases where courts granted summary judgment of no prosecution laches based on seven to eight years between filing a priority application to the issuance of a final patent. *See* D.I. 432 at 9 (citing *Cordance*, 631 F. Supp. 2d at 491 (eight years from filing of priority application to issuance of the final patent was not unreasonable); *Stambler v. RSA Security, Inc.*, 243 F. Supp. 2d 74, 76 (D. Del. 2003) (seven years from filing of priority application to issuance of final patent was not unreasonable)). However, because the "[d]uration of prosecution . . . does not provide a bright-line rule as to the reasonableness of prosecution,"

4

*Cordance*, 243 F. Supp. 2d at 491, the Court cannot conclude, as a matter of law, that nine years between filing the '235 application and the issuance of the last cfDNA patent was, by itself, reasonable. *Cf. Intuitive Surgical, Inc. v. Computer Motion, Inc.*, No. 01-203-SLR, 2002 WL 31833867, at *5 (D. Del. Dec. 10, 2002) (finding a delay of four years and fourth months unreasonable "for an experienced patentee"). What is more, the "reasonableness" of Natera's delay is belied by the undisputed fact that Natera was monitoring ArcherDX's anchored multiplex PCR ("AMP") technology—which ArcherDX's accused products are based on—for potential infringement as early as 2014, yet waited five years to file the cfDNA patent applications. D.I. 433 at Ex. 24, ¶¶ 89-125.

Natera attempts to bolster the "reasonableness" of its delay by asserting that its prosecution conduct, when viewed as a whole, shows that it was diligently prosecuting thirteen additional patent applications related to the cfDNA patents—six of which issued as patents. *See* D.I. 432 at 9 (citing *Stambler*, 243 F. Supp. 2d at 76 (finding a seven-year delay not unreasonable where plaintiff "acted reasonably in prosecuting the various continuations and division applications")). While "[t]he court must look to the prosecution history of the patent family as whole," *Cordance*, 631 F. Supp. 2d at 491, ArcherDX disputes that Natera's prosecution conduct, when viewed in the totality of the circumstances, was diligent. *See* D.I. 441 at 39-40. Specifically, ArcherDX's expert opines that Natera was not "diligent" because "Natera obtained just 3 patents in the cfDNA Patent family,"[3] and "abandoned half of all the applications in this family." *Id.* at 40-41; D.I. 433 at Ex. 24, ¶¶ 27-83. Further, there is evidence suggesting that Natera delayed prosecution of the cfDNA patents until 2019 when Natera's market position was threatened by ArcherDX. D.I. 441 at 39-

---

[3] Natera disputes this fact. As discussed above, Natera asserts that six patents from the cfDNA patent family issued during this time. *See* D.I. 451 at 1 n.1.

5

40; *see also* D.I. 444, Ex. II at 322:4-323:18 (Natera's 30(b)(6) witness testifying that Natera decided to the prosecute the cfDNA Patents in response to seeing that "other people are threatening [Natera's] position in the market"). Finally, while neither party contends that it is improper for a patentee to draft claims covering a competitor's product, ArcherDX contends that one could reasonably conclude that Natera's delay was unreasonable in light of "Natera [filing] at least 42 applications, [and] obtaining 5 issued patents" only after it began losing business to ArcherDX in 2019. D.I. 433 at Ex. 24, ¶¶ 71-83.

Based on the present record, the Court cannot conclude that Natera's nearly nine-year delay from the filing of the '235 application to the issuance of the final cfDNA patent was, as a matter of law, not unreasonable. *See Symbol II*, 422 F.3d at 1385. ("[T]here are no strict time limitations for determining whether continued refiling of patent applications is a legitimate utilization of statutory provisions or an abuse of those provisions. The matter is to be decided as a matter of equity, subject to the discretion of a district court before which the issue is raised."). While the present facts present a close call, *see e.g.*, *Cordance*, 243 F. Supp. 2d at 491; *Stambler*, 243 F. Supp. 2d at 76; *Intuitive Surgical*, 2002 WL 31833867, at *5, based on the current record, one could reasonably conclude that Natera's nine-year delay in prosecuting the cfDNA patents— coupled with the evidence suggesting that Natera closely monitored ArcherDX's development since 2014, that Natera believed ArcherDX might have been infringing its intellectual property, and that Natera filed dozens of related patent applications only after ArcherDX began threatening its market share—was unreasonable and inexcusable. Thus, ArcherDX has mustered sufficient evidence, including genuine disputes of material fact, which preclude granting Natera's motion for summary judgment of no unenforceability due to prosecution laches. Because the Court concludes that genuine issues of fact exist at the first element of prosecution laches, thereby precluding

summary judgment, the Court need not address whether there is evidence that ArcherDX had "intervening rights."

For the reasons set out above, the Court denies Natera's motion for summary judgment of no unenforceability due to prosecution laches.

### B. Defendants' Motion for Summary Judgment of Non-Infringement of the '482, '172, and '814 Patents is Denied

ArcherDX seeks summary judgment of non-infringement of the '482, '172, and '814 patents arguing that, because every claim of the '482, '172, and '814 patents purportedly requires the same "universal primer" for the "first" and "second" PCR steps, ArcherDX's use of two different primers—that is, the second primer being identical to the first except for three additional nucleotides—in successive PCR steps cannot, as a matter of law, literally infringe the patents. D.I. 430 at 5-7. Further, ArcherDX contends that there is also no infringement of the '482, '172, and '814 patents under the doctrine of equivalents ("DOE") because these patents disclose, but fail to claim, the use of "different universal primers in successive PCR steps such that the disclosure-dedication rule necessarily bars the DOE." *Id.* at 6.

Neither party disputes that each claim of the '482, '172, and '814 patents recite a first and second PCR step, each of which uses a "universal primer." *See* D.I. 430 at 5; D.I. 442 at 1. For example, claim 1 of the '172 patent recites:

> 1. A method for amplifying and sequencing DNA, comprising:
>
>> isolating cell-free DNA from a biological sample and tagging the isolated cell-free DNA, wherein each tagged DNA molecule comprises a molecular barcode;
>>
>> performing a first PCR to simultaneously amplify at least 10 target loci using *a universal primer* and at least 10 target-specific primers in a single reaction volume;

7

> performing a second, nested PCR to simultaneously amplify the at least 10 target loci using ***the universal primer*** and at least 10 inner target-specific primers in a single reaction volume;
>
> performing high-throughput sequencing to sequence the amplified DNA comprising the target loci.

*See* '172 patent at claim 1 (emphases added).

ArcherDX asserts that the definite article "the" connected to the second recitation of "universal primer" establishes that that "universal primer" refers back to the "universal primer" used in the first PCR. D.I. 430 at 5. Thus, the first and second PCR steps must use the same "universal primer." *Id.* While Natera hesitates to conclude that the "universal primer" used in the first PCR must be identical to the one used in the second PCR, Natera argues that, even if the primers used in the first and second PCR steps differ (i.e., by three additional nucleotides), both primers contain "the exact same 26-nucleotide universal priming sequence." D.I. 442 at 1 (citing D.I. 443 at Ex. 15, ¶ 43). In other words, although ArcherDX's accused products undisputedly use different primers for its successive PCR steps—P5_1 for the first PCR and P5_2, which is identical to P5_1 plus three additional nucleotides, for the second PCR—both primers contain the same 26-nucelotide "universal primer" sequence. *Id.* Thus, Natera asserts that ArcherDX's accused products literally infringe the '482, '172, and '814 patents because the same "universal primers" are used in both PCR steps, i.e., the same 26 nucleotide "universal primer" sequence is used in both steps. *Id.* at 1-2.

As a matter of claim construction, the use of the definite article "the" in conjunction with "universal primer" recited in the second PCR refers to the initial antecedent phrase "universal primer" as referred to in the first PCR. *See Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008). Thus, each claim of the '482, '172, and '814 patents require that the "universal primer" used in the first PCR step be the same as "***the*** universal primer" used in the

8

second PCR step. *See Guardant Health, Inc. v. Found. Med., Inc.*, No. 17-1616-LPS-CJB, 2020 WL 1329513, at *4 (D. Del. Mar. 23, 2020) ("Because definite articles such as 'the' can be 'anaphoric phrases, referring to the initial antecedent phrase,' the Court . . . reads the claim terms 'grouping the plurality of sequence reads' and 'grouping the sequence reads' as referring to the set of sequence reads discussed in the prior step."). Yet, even in light of this resolution, the parties' dispute amounts to an issue for the finder of fact relating to the application of the claims—that is, whether primers P5_1 and P5_2 share the same "universal primer" sequence, i.e., the same 26-nucelotide sequence, or whether the addition of three nucleotides in P5_2 constitutes a different "universal primer." *See, e.g.*, D.I. 443 at Ex. 15, ¶ 43; *id.* at Ex. 18, ¶¶ 31-33; *accord PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("[A]fter the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact."). This is especially true considering the parties dispute whether ArcherDX admitted in its Premarket Application to the FDA that the first and second PCR steps of the accused products use the same universal P5 primer. *See, e.g.*, D.I. 443 at Ex. 1 (ArcherDX's May 27, 2020 FDA Premarket Application); *id.* at Ex. 13, ¶¶ 266-68; Ex. 18, ¶¶ 31-33; *id.* at Ex. 15, ¶¶ 73-75.

As such, there exist genuine disputes of material fact regarding whether the P5 primers used in the first and second PCR steps of the accused products are the same "universal primer." Because the Court cannot supplant the role of the jury in weighing ArcherDX's litigation contentions against its representations made to the FDA, summary judgement of non-infringement of the '482, '172, and '814 patents is denied. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("[I]n entertaining a motion for judgment as a matter of law, the court should

review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.") (citations omitted). Given that factual issues remain as to whether ArcherDX's accused products literally infringe the '482, '172, and '814 patents, the Court declines to assess the merits of ArcherDX's theory that Natera is barred from asserting the doctrine of equivalents based on the dedication-disclosure doctrine.

For the above reasons, ArcherDX's motion for summary judgment of non-infringement of the '482, '172, and '814 patents is denied.

### III. CONCLUSION

For the foregoing reasons, the Court denies Natera's motion for summary judgment of no enforceability due to prosecution laches. The Court also denies ArcherDX's motion for summary judgment on non-infringement of the '482, '172, and '814 patents. Pursuant to D.I. 463, all remaining grounds for summary judgment identified in the parties' respective motions are also denied.[4] *See* D.I. 467; D.I. 468.

* * *

WHEREFORE, at Wilmington this 6th day of February, 2023, **IT IS HEREBY ORDERED** that:

1. Natera's Motion for Summary Judgment and Motion to Preclude Expert Testimony (D.I. 428) is **DENIED-IN-PART**.

2. Defendants' Partial Motion for Summary Judgment (D.I 429) is **DENIED-IN-PART**.

---

[4] The Court will issue a separate opinion addressing the parties' respective *Daubert* motions. *See, e.g.*, D.I. 428; D.I. 431.

3. Natera's Motions to Preclude Expert Testimony (D.I. 428) and Defendants' Motion to Preclude Certain Expert Testimony (D.I. 431) remain under consideration by the Court.

4. Because the Memorandum Order is filed under seal, the parties shall meet and confer and, no later than February 13, 2023, submit a joint proposed redacted version, accompanied by a supporting memorandum, detailing how, under applicable law, the Court may approve any requested redactions. In the absence of a timely, compliant request, the Court will unseal the entire opinion.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

11