IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATERA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 20-125 (GBW) |
| v. | ) | (CONSOLIDATED) |
| | ) | |
| ARCHERDX, INC., ARCHERDX, LLC and | ) | JURY TRIAL DEMANDED |
| INVITAE CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## **FINAL JURY INSTRUCTIONS**

## TABLE OF CONTENTS

1.   GENERAL INSTRUCTIONS .................................................................................. 1
   1.1   INTRODUCTION ..................................................................................... 1
   1.2   JURORS' DUTIES ................................................................................... 2
   1.3   EVIDENCE DEFINED ............................................................................ 3
   1.4   DIRECT AND CIRCUMSTANTIAL EVIDENCE ............................. 4
   1.5   CONSIDERATION OF EVIDENCE .................................................... 5
   1.6   USE OF NOTES ....................................................................................... 6
   1.7   CREDIBILITY OF WITNESSES ......................................................... 7
   1.8   NUMBER OF WITNESSES ................................................................... 9
   1.9   EXPERT WITNESSES ......................................................................... 10
   1.10   DEPOSITION TESTIMONY ............................................................... 11
   1.11   BURDENS OF PROOF ......................................................................... 12
2.   THE PARTIES AND SUMMARY OF PATENT ISSUES ............................. 14
3.   PATENT INSTRUCTIONS .................................................................................. 16
   3.1   PATENT CLAIMS GENERALLY ...................................................... 16
   3.2   DEPENDENT AND INDEPENDENT CLAIMS ............................... 17
   3.3   OPEN ENDED OR "COMPRISING" CLAIMS ............................... 18
   3.4   CLAIM CONSTRUCTION .................................................................. 19
4.   INFRINGEMENT .................................................................................................. 20
   4.1   PATENT INFRINGEMENT GENERALLY ...................................... 20
   4.2   DIRECT INFRINGEMENT BY LITERAL INFRINGEMENT ...................... 21
   4.3   DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS 23
   4.4   INDIRECT INFRINGEMENT – INDUCEMENT ........................... 24
   4.5   INDIRECT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT ........ 26
   4.6   INFRINGEMENT DESPITE OTHER PATENTS ............................ 28
   4.7   FDA SAFE HARBOR DEFENSE ....................................................... 29
5.   INVALIDITY .......................................................................................................... 30
   5.1   PATENT INVALIDITY - GENERALLY ........................................... 30
   5.2   EFFECTIVE FILING DATE ................................................................ 31
   5.3   PERSON OF ORDINARY SKILL IN THE ART ............................. 32
   5.4   WRITTEN DESCRIPTION .................................................................. 33
   5.5   INDEFINITENESS ................................................................................ 35

| | | |
|---|---|---|
| 5.6 | FAILURE TO CLAIM WHAT THE INVENTORS REGARDED AS THEIR INVENTION | 36 |
| 5.7 | INVENTORSHIP | 37 |
| 5.8 | PRIOR ART GENERALLY | 39 |
| 5.9 | ANTICIPATION | 40 |
| 5.10 | OBVIOUSNESS | 41 |
| 5.11 | OBJECTIVE INDICIA OF NON-OBVIOUSNESS | 44 |
| 6. | DAMAGES | 45 |
| 6.1 | PATENT INFRINGEMENT DAMAGES – GENERALLY | 45 |
| 6.2 | TYPES OF DAMAGES | 46 |
| 6.3 | LOST PROFITS – "BUT FOR" TEST | 47 |
| 6.4 | LOST PROFITS – PANDUIT FACTORS | 48 |
| 6.5 | LOST PROFITS – DEMAND | 49 |
| 6.6 | LOST PROFITS—ACCEPTABLE NON-INFRINGING SUBSTITUTES | 50 |
| 6.7 | LOST PROFITS – CAPACITY | 51 |
| 6.8 | LOST PROFITS – AMOUNT OF PROFIT | 52 |
| 6.9 | REASONABLE ROYALTY | 53 |
| 6.10 | REASONABLE ROYALTY – FACTORS | 54 |
| 6.11 | REASONABLE ROYALTY – USE OF COMPARABLE LICENSES | 57 |
| 7. | DELIBERATION AND VERDICT | 58 |
| 7.1 | INTRODUCTION | 58 |
| 7.2 | UNANIMOUS VERDICT | 59 |
| 7.3 | DUTY TO DELIBERATE | 60 |
| 7.4 | SOCIAL MEDIA | 61 |
| 7.5 | COURT HAS NO OPINION | 62 |

## 1.    **GENERAL INSTRUCTIONS**

### 1.1    **INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.  Please listen very carefully to everything I say.  In following my instructions, you must follow all of them, including the ones I gave to you on Monday at the start of the case and the ones I have given during trial.  You may not single out some and ignore others.  They are all important.

Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer.  You will have a written copy of these instructions with you in the jury room for your reference during deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.  We will go over that later.

I will start by explaining your duties and the general rules that apply in every civil case.  Then I will explain some rules that you must use in evaluating particular testimony and evidence.  Then I will explain the positions of the parties and the law you will apply in this case.  And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

## 1.2    **JURORS' DUTIES**

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.  You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on the issues presented.  I will instruct you about the burden of proof shortly.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes any instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not guess or speculate, and do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

## 1.3   EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in the courtroom.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition testimony that has been played by video or read to you, the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation, and I instruct you to accept as true.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  The lawyers' questions and objections are not evidence.  My legal rulings are not evidence.  You should not be influenced by a lawyer's objection or by my ruling on that objection.  None of my comments and questions are evidence.  The notes taken by any juror are not evidence.  Certain charts and graphics have been used to illustrate testimony from witnesses.  Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to, identify, or summarize evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  Sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.  Make your decision based only on the evidence, as I have defined it here, and nothing else.

## 1.4    **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence." I will now remind you what each means.

Direct evidence is evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 1.5    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## 1.6    USE OF NOTES

You may use notes taken during the trial to assist your memory.  Remember that your notes are for your personal use.  They may not be given or read to anyone else.  Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors.  Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial. Some testimony that is considered unimportant at the time presented and, thus, not written down, may take on greater importance later on in the trial in light of all the evidence presented.  Your notes are valuable only as a way to refresh your memory.  Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

## 1.7    CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief.  Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand.

Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony.  Two or more persons witnessing an incident or transaction may see or hear it differently.  Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different, or inconsistent, from the testimony that he or she gave during the trial.  It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an

innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

## 1.8    NUMBER OF WITNESSES

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.  Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

### 1.9    EXPERT WITNESSES

During the trial, you heard testimony from expert witnesses. When knowledge or special skill in a technical or business subject matter might be helpful to the jury, a person who has that special training or experience in that technical or business field—called an expert witness—is permitted to state his or her opinion on those technical or business matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves.  If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

## 1.10   **DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you through depositions that were read into evidence or electronically played. This testimony must be given the same consideration you would give it had the witness personally appeared in court. Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts. The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with the evidence. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

### 1.11   BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I told you about these standards of proof during my preliminary instructions to you and I will now remind you what they mean.

Plaintiff Natera has accused Defendants of infringing certain claims of three patents. Defendants deny those allegations and contend that the asserted patent claims are invalid.

Natera has the burden of proving its claims and the amount of monetary damages by a preponderance of the evidence. Preponderance of the evidence is evidence that is more likely true than not. To put it another way, if you were to put Natera's and Defendants' evidence on opposites sides of the scale, and the evidence supporting Natera's claims would make the scales somewhat tip to Natera's side, you should find for Natera. If the scale should remain equal or tip somewhat to Defendants' side, then Natera has not met its burden of proof.

Defendants have the burden of proving by a preponderance of the evidence that use of Defendants' accused products are protected from infringement by the safe harbor provision of patent laws.

In addition to denying Natera's claims that they infringe, Defendants contend that all of the asserted patent claims are invalid. Defendants have the burden of proving that each of the asserted claims is invalid and must do so by clear and convincing evidence. Clear and convincing evidence means that it is highly probable that a fact is true. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases. That requirement is the highest burden of proof in our judicial system. It applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

## 2.    **THE PARTIES AND SUMMARY OF PATENT ISSUES**

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

Plaintiff is Natera, Inc. and I will refer to plaintiff as "Natera."

Defendants are ArcherDX, Inc., ArcherDX, LLC and Invitae Corporation and I will refer to these parties collectively as the "Defendants."

Natera is the owner of three patents at issue in this case:  U.S. Patent Nos. 10,557,172; 10,597,708; and 10,731,220.  As you have heard during this trial, we referred to those patents as the'172, '708, and '220 patents, respectively.  Sometimes we referred to them collectively as the asserted patents or patents-in-suit.

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following issues:

(1)    Whether Natera has proven by a preponderance of the evidence that Defendants infringe claims 1, 6 and 8 of the '172 patent; claims 1, and 19 of the '708 patent; and claims 1, 3, 4, 6, and 7 of the '220 patent.

(2)    Whether Defendants have proven by a preponderance of the evidence that use of Defendants' accused products are protected by the safe harbor provision of the patent laws.

(3)    Whether Defendants have proven by clear and convincing evidence that claims 1, 6, and 8 of the '172 patent; claims 1, 9, and 19 of the '708 patent; and claims 1, 3, 4, 6, and 7 of the '220 patent are invalid.

(4)    If you decide that Defendants have infringed any asserted claim of the Patents-in-Suit that are not invalid, you will also need to decide any money damages to be awarded to compensate Natera for that past infringement.  That decision will include both whether Natera has

14

proven by a preponderance of the evidence that it is entitled to damages as well as the amount of damages.

**3.**   **PATENT INSTRUCTIONS**

**3.1**   **PATENT CLAIMS GENERALLY**

Before you can decide many of the issues in this case, you will need to understand the role of the patent "claims." The patent claims are the numbered sentences at the end of a patent. The claims are important because the words of a claim define the scope of the patent right. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but the claims define the extent of the patent's coverage.

### 3.2    DEPENDENT AND INDEPENDENT CLAIMS

Claims can be stated in two different ways in a patent. The first way a patent claim can be stated is in the form of an "independent" claim. An "independent" claim does not refer to any other claim of the patent. An independent claim is read alone to determine its scope.

For example, claim 1 of the '220 patent is an independent claim. You know this because claim 1 does not refer to any other claims. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

The second way a claim can be stated is in the form of a "dependent" claim. A "dependent" claim does not itself recite all the requirements of the claims, but instead, incorporates the requirements of another claim or claims and adds its own additional requirements. In this way, the claim "depends" on another claim or claims. Accordingly, to determine what a dependent claim covers, it is necessary look at both the dependent claim and any other claims from which it depends.

For example, claim 3 of the '220 patent is a dependent claim. If you look at claim 3, it refers to claim 1. Therefore, to determine what claim 3 of the '220 patent covers, you must consider both the words of claims 1 and 3 together. Likewise, claim 7 of the '220 patent refers to claim 6, and claim 6 refers to claim 1. Therefore, to determine what claim 7 of the '220 patent covers, you must consider the words of claims 1, 6 and 7 together.

### 3.3    OPEN ENDED OR "COMPRISING" CLAIMS

The beginning portion, also known as the preamble, of a claim often uses the word "comprising."    The word "comprising," when used in the preamble, means "including the following but not excluding others."    A claim that uses the word "comprising" is not limited to systems or methods having only the elements that are recited in the claim, but also covers systems and methods that have additional elements that are not recited in the claim. The presence of additional steps does not take a process outside the scope of the claim.

### 3.4    CLAIM CONSTRUCTION

It is my job as a judge to define what the terms of the asserted claims mean and to instruct

you about these meanings.  You must accept the meanings I give you and apply those meanings to

the issues that you are asked to decide.  You must ignore any different interpretation given to these

terms by the witnesses or by attorneys.  I instruct you that the following claim terms have the

following definitions.

**With respect to the asserted claims of all three of the patents-in-suit:**

- "target loci" means: "selected segments of nucleic acid of interest of an individual."

- "annealing step" means: "a step in the amplification process to allow one or more primers to hybridize to their complementary sequences."

**With respect only to the asserted claims of the'172 and '220 Patents:**

- "nested PCR" means: "a subsequent round or rounds of PCR amplification using one or more new primers that bind internally, by at least one base pair, to the primers used in a previous round."

**With respect only to the asserted claims of the'220 Patent:**

- "sequencing tag" means: "a nucleic acid sequence introduced to carry out the process of high throughput sequencing."

**With respect only to the asserted claims of the '708 Patent:**

- "a melting temperature of the at least 2 primers" means: "the temperature at which one-half (50%) of a DNA duplex of each primer and its perfect complement dissociates and becomes single strand DNA" and "requires that at least two primers have a melting temperature lower than the annealing temperature of the reaction."

If I have not provided a specific definition for a given term, you are to use the ordinary

meaning of that term.  You should not take my definition of the language of the claims as an

indication that I have a view regarding how you should decide the issues that you are being asked

to decide, such as infringement and invalidity.  These issues are yours to decide.

19

## 4.    INFRINGEMENT

### 4.1    PATENT INFRINGEMENT GENERALLY

I will now instruct you as to the rules you must follow when deciding whether Natera has proven that Defendants have infringed any of the asserted claims of the patents-in-suit.

The United States' patent law gives the owner of a valid patent the right to exclude others from importing, making, using, selling, or offering to sell a patented system, or performing a patented method, within the United States during the term of the patent. Any person or company that has engaged in any of those acts without the patent owner's permission, infringes the patent.

In order to prove infringement, Natera must prove that the requirements for direct and indirect infringement are met by a preponderance of the evidence. Infringement is assessed on a claim-by-claim basis. Therefore, you, the jury, must determine infringement for each claim separately. As a result, you may find that there is infringement for one claim but no infringement as to another.

I will now explain each type of infringement in more detail.

## 4.2    DIRECT INFRINGEMENT BY LITERAL INFRINGEMENT

In order to prove direct infringement by literal infringement, Natera must prove by a preponderance of the evidence that Defendants have used in the United States a method that meets all of the requirements of at least one claim of the asserted patents.

To determine literal infringement, you must compare the methods of using the accused products with each asserted claim to determine whether each and every one of the requirements of that claim is satisfied. If any of the methods of using the accused products does not contain one or more elements recited in a claim, there is no literal infringement with respect to that claim. You should note, however, that the presence of other elements in the accused product or method beyond those claimed does not avoid infringement as long as every claimed element is present.

If you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product or method meets the additional requirements of any claims that depend from the independent claim, thus, whether those dependent claims have also been infringed.

Remember the question is whether the methods of using the accused products infringe any of the asserted claims, and not whether the methods of using the accused products is similar or even identical to a product of Natera. Accordingly, you must be certain to compare the methods of using the accused products only with the claims it is alleged to infringe and not with any product of Natera.

One may directly infringe a patent unknowingly – that is, without knowledge that what one is doing is an infringement of the patent. One may also infringe while believing in good faith that a particular action is not an infringement of any patent. One's product may also infringe even if there are other patents covering the product.

21

In addition, Natera need not always have direct evidence of infringement, infringement may be established by circumstantial evidence.

### 4.3    DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

Under the doctrine of equivalents, a product or method can infringe an asserted claim if it includes parts that are equivalent, even if not identical, to the limitations of the claim. Under the patent law, an infringing equivalent is not treated any differently than a product or method that literally infringes the claim of the patent.

As with literal infringement, application of the doctrine of equivalents is on an element-by-element basis, meaning that for a product or method to infringe an asserted claim under the doctrine of equivalents, the requirement of the asserted claim that is not literally found in the accused product or method must be present by equivalence.

You may find that a claim limitation is present in an accused product under the doctrine of equivalents if a person having ordinary skill in the art would have considered the differences between that claim limitation and a comparable element to be "insubstantial" or would have found that the structure or step:   (1) performs substantially the same function; and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim.

23

### 4.4    INDIRECT INFRINGEMENT – INDUCEMENT

In order to prove indirect infringement by inducement, Natera must prove that Defendants purposefully causes, urges or encourages another person or entity to infringe its patents. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which can occur unintentionally. As with direct infringement, you must determine whether there has been inducement on a claim-by-claim basis. If there is no direct infringement by anyone, there can be no induced infringement.

Here, Natera alleges that Defendants induced their customers to infringe the patents-in suit. Proof of induced infringement requires a showing by a preponderance of the evidence that the accused infringer intentionally induced a third party to directly infringe an issued patent, knowing that the third party's induced actions would, in fact, directly infringe that patent. In order to be liable for inducing infringement, Natera must prove by a preponderance of the evidence that:

1. Defendants aided, instructed, or otherwise acted with the intent to cause acts by their customers that would constitute direct infringement of the asserted claims of the patents-in-suit;

2. Defendants knew of the patents-in-suit or showed willful blindness to the existence of the patents-in-suit at that time;

3. Defendants knew or should have known that acts by their customers, if taken, would constitute infringement of the asserted claims of the patents-in-suit; and

4. Defendants' customers directly infringed at least one of the asserted claims of the patents-in-suit.

In order to establish active inducement of infringement, it is not sufficient that others directly infringe the claim. Nor is it sufficient that Defendants were aware of the acts by others

that directly infringe. Rather, in order to find inducement, you must find that, at the time of the direct infringement, Defendants specifically intended others to use its products in at least some ways that would infringe the asserted claims of an issued patent, or that Defendants believed there was a high probability that an issued patent exists and that the direct infringer's acts infringe that patent but deliberately took steps to avoid learning that fact. The mere fact, if true, that Defendants knew or should have known that there was a substantial risk that the acts of one or more of its customers would infringe the patents-in-suit would not be sufficient for active inducement of infringement.

**4.5**    **INDIRECT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT**

Natera also asserts that Defendants are liable for contributory infringement by contributing to the direct infringement of the patents-in-suit by Defendants' customers.

Contributory infringement can occur when someone supplies something that is used to infringe one or more of the patent claims. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis. In order for there to be contributory infringement, the person or entity who received the component must infringe the patent. The component must also have certain characteristics. First, the component must be a material part of the invention. Second, the component must be especially made or adapted for use in a manner that infringes the patent, and the supplier must know that the component was especially made for that use. Third, the component must not have substantial uses that do not infringe the patent. A component that has a number of non-infringing uses is often referred to as a staple, or commodity, article. Providing such a staple or commodity article is not contributory infringement, even if the person to whom the article was supplied uses it in an infringing manner.

To establish that Defendants have contributorily infringed an asserted claim of the patents-in-suit, Natera must prove the following by a preponderance of the evidence:

1.    Defendants knew of the patents-in-suit;

2.    Defendants sold or supplied a material component of the claimed invention to a customer;

3.    Defendants knew that the component was especially made for use in a manner that infringes the patents-in-suit;

4.     The component is not a staple or commodity article capable of substantial non-infringing use; and

5.     One or more of Defendants' customers actually used the component in a manner that you find infringes an asserted claim of the patents-in-suit.

### 4.6    INFRINGEMENT DESPITE OTHER PATENTS

You may hear evidence that each party in this case owns other patents and also uses its own technology in those other patents. Ownership of or a license to separate patents is not a defense to patent infringement. The parties in this case can still infringe the patents asserted by the other party, even if it has its own patents in the same area.

## 4.7    **FDA SAFE HARBOR DEFENSE**

Defendants contend that they have not infringed the patents-in-suit, based on Section 271(e)(1) of the Patent Act, a statutory provision that you have heard referred to as the "Safe Harbor." Defendants bear the burden of proving that the Safe Harbor applies to Defendants' use of Natera's patented inventions. You must decide whether Defendants have proven by a preponderance of the evidence that the Safe Harbor applies to Defendants' use of the patented products or methods claimed in the patents-in-suit. You must evaluate each of the accused activities separately to determine whether the Safe Harbor applies.

The Safe Harbor applies to the use of a patented invention solely for uses reasonably related to the development and submission of information to the Food and Drug Administration (also known as the FDA). The Safe Harbor is intended to provide protection solely for the use of patented inventions that are reasonably related to obtaining FDA approval for a product. In contrast, the routine record retention requirements associated with testing and other aspects of the commercial production processes do not provide Safe Harbor protection. Even when an activity is both reasonably related to the development and submission of the FDA for the purpose of obtaining FDA approval and a secondary use, the activity may still fall under the Safe Harbor.

## 5.    INVALIDITY

### 5.1    PATENT INVALIDITY - GENERALLY

I will now instruct you on the rules you must follow in deciding whether or not the Defendants have proven that the asserted claims of the patents-in-suit are invalid.  As I previously told you, to prove that a claim of a patent is invalid, the party challenging validity must persuade you by clear and convincing evidence.    The law presumes that the patent claims are valid.

Like infringement, you must determine whether each asserted claim is invalid on a claim-by-claim basis.  As I instructed you earlier, there are independent claims and dependent claims in a patent.    Finding the broader independent claim to be invalid does not mean the narrower dependent claims are also invalid.  However, if you find a narrower dependent claim to be invalid, you must find the broader independent claim from which it depends is also invalid.

Claims are construed in the same way for determining infringement as for determining invalidity. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity.

## 5.2    EFFECTIVE FILING DATE

Natera contends that the asserted claims of the '172 and '220 patents are entitled to a priority date of November 18, 2011, based on the filing of provisional application no. 13/300,235 ("the '235 application"). Defendants contend that the asserted claims of the '172 and '220 patents are not entitled to claim priority to the '235 application.  For the purposes of analyzing certain questions of validity, you may need to determine whether the asserted claims of the'172 and '220 patents are sufficiently supported by the '235 application.

Natera may rely on the filing date of the '235 application to establish the effective filing date if the application meets the written description requirement.

If you determine that Natera has met its burden of coming forward with evidence showing that the '172 and '220 patents are entitled to claim priority to filing date of the '235 application, then Defendants must prove by clear and convincing evidence that Natera is not entitled to the filing date of the '235 application.

Evidence relating to changes in the people named as inventors on the '172 and '220 patent is not relevant to the question of whether the '235 application provides written description support for the claims of the '172 and '220 patents.

The parties do not dispute the effective filing date of the '708 patent, which is April 21, 2014.

31

### 5.3   PERSON OF ORDINARY SKILL IN THE ART

To determine the validity or invalidity of the patent claims, you must consider the level of ordinary skill in the field of the invention at the time of the invention.

In this case, the parties agree that a person of ordinary skill in the art would have earned a masters or a Ph.D. in molecular biology, genetics, or a related field, and would have had at least two years of post-doctoral or industry experience, or a Bachelor of Science in such fields with at least three to five years of academic or industry experience studying molecular biology techniques.

## 5.4   **WRITTEN DESCRIPTION**

The patent laws contain certain requirements for the part of the patent called the specification.

The patent law contains certain requirements for the part of the patent called the specification. Defendants contend that the asserted claims of the patents-in-suit are invalid because the specifications of the patents do not contain an adequate written description of the claimed invention. Defendants bear the burden of establishing by clear and convincing evidence that each of the asserted claims of the patents-in-suit is invalid for lack of written description.

In deciding whether the patents satisfy the written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed. The parties do not dispute the effective filing date of the '708 patent is April 21, 2014. Evidence relating to changes in the people named as inventors on the '172 and '220 patent is not relevant to the question of whether the '235 application provides written description support for the claims of the '172 and '220 patents.

The written description requirement is satisfied if a person having ordinary skill in the art at the time of the effective filing date would have recognized that the specifications describe the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor possessed the subject matter finally claimed in the patent on or before the effective filing date.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification and the exact words found in the claim need not be used. The specification is not required to expressly include what is well-known to a person of ordinary skill in the art as of the effective filing date. The level of required disclosure depends on a variety of factors, such as the existing knowledge in the

particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter. The written description requirement does not demand either examples or an actual reduction to practice.

In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

(1)     The nature and scope of the patent claims;

(2)     The complexity, predictability, and maturity of the technology at issue;

(3)     The existing knowledge in the relevant field; and

(4)     The scope and content of the prior art.

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or groups of claims.

## 5.5    **INDEFINITENESS**

The patent laws also require that the claims of a patent be sufficiently clear that a person of ordinary skill in the art reading them is able to determine what the claims cover and what they do not cover. This is called the definiteness requirement.  If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

In this case, Defendants contend that the asserted claims of the'708 patent is invalid because language of the claims is indefinite.  As the party challenging validity, Defendants bear the burden of establishing, by clear and convincing evidence, that the'708 patent is indefinite.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art, and the description of the invention contained in the patent.  A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the art of what the patent claims cover.  Simply because claim language may not be precise does not mean that the claim is indefinite. The patent and prosecution history must disclose a single known approach or establish that, where multiple known approaches exist, a person having ordinary skill in the art would know which approach to select.

## 5.6    FAILURE TO CLAIM WHAT THE INVENTORS REGARDED AS THEIR INVENTION

The patent laws also require that patents claim what the inventors regarded as their invention.

In this case, Defendants contend that the asserted claims of the patents-in-suit do not claim what the inventors regarded as their invention, and are therefore invalid. As the party challenging validity, Defendants bear the burden of establishing, by clear and convincing evidence, that the asserted claims of the patents-in-suit fail to claim what the inventors regarded as their invention.

A patent claim is invalid for failure to claim what the inventors regarded as their invention, where it would be apparent to a person of ordinary skill in the art, based on the specification, that the invention set forth in a claim is not what the patentee regarded as his or her invention.

A patentee is not required to claim every invention disclosed in a single patent. In order to find indefiniteness based on an applicant's failure to claim what they regard as their invention, there must be "'an irreconcilable contradiction' within the patent, *i.e.*, between the patent specification and patent claims. What the patentee subjectively intended his or her claims to mean is not relevant to the claim's objective meaning and scope.

36

## 5.7    INVENTORSHIP

Under the patent laws, in order for someone to be entitled to a patent, he or she must have invented the subject matter of one or more claims in the patent. In this case, Defendants contend that the '172 and '220 patents are invalid for failing to name the proper inventors. The inventors named on the '172 and '220 patents are:

Matthew Rabinowitz

George Gemelos

Bernhard Zimmermann

Matthew Hill

Allison Ryan

Milena Banjevic

Zachary Demko

Johan Baner

Styrmir Sigurjonsson

As the party challenging validity, Defendants bear the burden of proving, by clear and convincing evidence, that the '220 and '172 patents are invalid for improper inventorship.

To be an inventor, one must make a significant contribution to the conception of at least one of the claims of the patent even if that claim has not been alleged to be infringed. Whether the contribution is significant in quality is measured against the full scope of the invention. To prove improper inventorship, Defendants must prove either that one or more of the named inventors did not contribute to the conception of the subject matter of at least one claim of the patent, or that one or more persons not named as an inventor did contribute to the conception of the subject matter of at least one claim of the patent.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort. Corroboration is required of any witness whose testimony alone is asserted to invalidate a patent.

## 5.8   PRIOR ART GENERALLY

I will now instruct you on a different challenge to the patents-in-suit based on prior art. Under the patent laws, in order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as prior art. Prior art is considered in, amongst other things, determining whether the asserted claims of the patents-in-suit are anticipated or obvious. Prior art may include items that were publicly known or that have been publicly used or offered for sale before the priority date, or references, such as publications or patents, published before the priority date that disclose the claimed invention or elements of the claimed invention.

Defendants have the burden to prove something is prior art by clear and convincing evidence. Because of the Defendants' burden to prove something is prior art by clear and convincing evidence, the testimony of a single witness is insufficient to prove that something is prior art. A party seeking to prove that something is prior art must provide evidence that corroborates a single witness's oral testimony.

If you find that a party has not corroborated a witness's oral testimony with other evidence, you are not permitted to find that the subject of that oral testimony qualifies as prior art. You do not need to find that every single detail of the oral testimony is independently supported by the corroborating evidence; you just need to find that the evidence shows the witness's testimony to be credible.

**5.9**   **ANTICIPATION**

Under the patent laws, an invention must be new to be entitled to patent protection. If a device or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is "anticipated" by the prior art.

In this case, Defendants contend that the asserted claims of the patents-in-suit are invalid because the claimed inventions are anticipated. To prove anticipation, Defendants must show by clear and convincing evidence that one prior art reference discloses each and every element of the patent claim. You may not combine two or more items of prior art to find anticipation. Anticipation must be determined on a claim-by-claim basis. In determining whether every one of the claimed limitations is found in the prior art, you should consider what a person of ordinary skill in the art would have understood from his or her review of the prior art.

**5.10   OBVIOUSNESS**

As I explained previously, under the patent laws a person is granted a patent only if the invention claimed in the patent is both new and not obvious in light of what came before. Even though an invention has not been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the art at the time the invention was made. Obviousness may be proven by considering more than one item of prior art. In this case, Defendants contend the asserted claims of the patents-in-suit are invalid as being obvious.

Defendants must prove by clear and convincing evidence that the asserted claims of the patents-in-suit would have been obvious to a person of ordinary skill in the art at the time the invention was made. In determining whether the claimed invention was obvious, consider each claim separately.

The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In arriving at your decision on the issue of whether or not the asserted claims would have been obvious to a person of ordinary skill in the art and, therefore, are invalid, you must consider (1) the scope and content of the prior art, (2) the level of ordinary skill in the pertinent art; and (3) the differences between the claimed invention and the prior art.

To determine the scope and content of the prior art, you should determine what prior art was reasonably pertinent to the particular problems the inventor faced. A person of ordinary skill in the art is presumed to have knowledge of the pertinent prior art.

I have already instructed you on the level of ordinary skill in the art. You are to apply that definition when deciding whether the asserted claims would have been obvious.

You must next consider the differences, if any, between the prior art and asserted claims. Although it is proper for you to consider differences between the claimed invention and the prior art, you should not focus on only the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.

A claim is not proven obvious merely by demonstrating that each of the elements in a claim was known in the prior art. You must consider the invention as a whole. Most, if not all, inventions rely on known building blocks, and inventions are very often – almost of necessity – combinations of what is already known.

If you find that the available prior art shows each of the limitations of the asserted claims, you consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art to combine the known elements in the same manner as the asserted claims. This is often referred to as "motivation to combine." The motivation to modify the prior art to arrive at the asserted claim need not be the same motivation that the inventor had. Additionally, a person of ordinary skill in the art must have had a reasonable expectation of success in combining the known elements in the way the asserted claim does.

In arriving at your decision on the issue of whether the asserted claims would have been obvious to a person of ordinary skill in the art, you may take into account such factors as:

(1)     Whether the asserted claims were merely the predictable result of using prior art elements according to their known functions;

(2)     Whether the asserted claims provide an obvious solution to a known problem in the relevant field;

(3)     Whether the prior art teaches or suggests the desirability of combining elements in the asserted claims;

(4)     Whether the prior art teaches away from combining elements in the asserted claims; and

(5)     Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

You should not consider what is known today or use what is taught in the patent as a road map for selecting and combining items of prior art.  Do not use hindsight; instead, put yourself in the place of a person of ordinary skill in the art as of the date of the invention.

## 5.11   OBJECTIVE INDICIA OF NON-OBVIOUSNESS

In your determination of obviousness, you should also consider what are called "objective indicia" or secondary considerations, that may show that the claimed invention is not obvious. These indicia include:

- whether the claimed invention was commercially successful as a result of the claimed invention (rather than design needs, market-pressure, advertising, or similar activities);

- whether others had tried and failed to make the claimed invention;

- whether the industry had expressed skepticism of the claimed invention;

- whether others copied the claimed invention;

- whether the claimed invention satisfied a long-felt need;

- whether others in the field praised the claimed invention;

- whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

- whether the claimed invention achieved unexpected results;

- whether others sought or obtained rights to the patent from the patent holder; and

- whether the inventor proceeded contrary to accepted wisdom in the field.

These factors should be considered along with all the other evidence in the case in determining whether the asserted claims would have been obvious.  In considering this kind of evidence, you should consider whether the objective indicia were attributable to the features of the asserted claims as opposed to features already found in the prior art.

## 6.    DAMAGES

### 6.1    PATENT INFRINGEMENT DAMAGES – GENERALLY

I will now give you some instructions related to damages. By instructing you on damages, I am not suggesting which party should win this case on any issue. These instructions are only to guide you in case you find that Defendants infringed a valid claim of any of the patents-in-suit.

 If you find that Defendants have infringed any of the claims of the patents-in-suit, and that those claims are not invalid, you must determine the amount of damages to be awarded to Natera. On the other hand, if you find that each of the asserted claims of the patents-in-suit are either invalid or not infringed, then you should not consider damages in your deliberations.

Natera has the burden to prove each element of its damages—including the amount of the damages—by a preponderance of the evidence. While Natera is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

The amount of damages you award must be adequate to compensate Natera for any infringement you determine to have occurred. Damages are not meant to punish an infringer.

Damages are awarded on the sale of products that you find that practice  the patented methods in the United States). Damages may also be awarded on sales of products that practice the patented methods in their normal intended use outside of the United States if, for those products, you find that (1) Defendants' infringement in the United States was a cause of the sale of that product, and (2) Defendants made or sold the product within the United States.

## 6.2    TYPES OF DAMAGES

There are different types of damages that are available for patent infringement. In this case, Natera seeks two types of damages for patent infringement: lost profits and a reasonable royalty. Lost profits damages compensate the patent owner for the additional profits that it would have earned if the accused infringer had not infringed. You may hear this referred to as the "but for" test. I will discuss lost profits in more detail shortly.

I will also discuss a reasonable royalty later in more detail. Generally, a reasonable royalty is defined by the patent laws as a reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive. A reasonable royalty is the minimum amount of damages that a patent owner may recover.

### 6.3    LOST PROFITS – "BUT FOR" TEST

I will first instruct you about lost profits damages.

Natera is seeking lost profits damages in this case in connection with Defendants' PCM contracts with certain pharmaceutical companies.

To prove lost profits, Natera must show a causal relationship between the infringement and Natera's loss of profit. In other words, Natera must show that, but for Defendants' infringement, Natera would have made additional profits through the sale of all or a portion of the sales of PCM made by Defendants. Natera must prove this by a preponderance of the evidence, i.e., it is more likely than not that Natera would have made additional profits if Defendants had not infringed. Part of your job is to determine what the companies who used the allegedly infringing product from Defendants would have done if the alleged infringement had not occurred. It is important to remember that the profits I have been referring to are the profits allegedly lost by Natera, not the profits, if any, made by Defendants on the allegedly infringing sales.

### 6.4 LOST PROFITS – PANDUIT FACTORS

Natera may establish "but for" causation and is entitled to an award of lost profits if you

find that Natera has proven each of the following four factors by a preponderance of the evidence:

1. That there was demand for the patented method in the relevant market;

2. That there were no acceptable, non-infringing substitute products or services;

3. That Natera had the manufacturing and marketing capacity to meet the demand of the infringing sales actually made by Defendants; and

4. The amount of profit that Natera would have made if it was not for Defendants' infringement.

### 6.5    LOST PROFITS – DEMAND

The first factor asks whether there was a demand for the patented method in the relevant market. Natera can prove demand for the patented method by showing significant sales of a Natera's own patented product or methods. Natera also can prove demand for the patented method by showing significant sales of Defendants' allegedly infringing product that are covered by one or more of the asserted claims of the patents-in-suit.   To use sales of Defendants' product as proof of this demand, however, Natera's and Defendants' products must be sufficiently similar to compete against each other in the same market.

## 6.6    LOST PROFITS—ACCEPTABLE NON-INFRINGING SUBSTITUTES

The second factor asks whether there were non-infringing, acceptable substitutes for the patented products in the marketplace and the impact of such substitutes on the marketplace absent the sale of Defendants' product. If the realities of the marketplace are that competitors other than Natera would likely have captured some or all of the sales made by Defendants, even despite a difference in the products, then Natera is not entitled to lost profits on those sales.

To be an acceptable substitute, the products must have had one or more of the advantages of the patented invention that were important to the purchaser of the infringing products, not necessarily to the public in general. The acceptable substitutes must also not infringe the patent, either because they were licensed under the patent or they did not include all the features required by the patent. The acceptable substitutes, in addition, must have been available during the damages period. The substitute need not have actually been sold at that time. If you determine that some of the purchasers of Defendants' accused product would just as likely have purchased a non-infringing acceptable product, then Natera has not shown it lost those sales but for Defendants' sales.

Even if you find that Natera's and Defendants' products were the only ones with the advantages of the patented invention, Natera is nonetheless required to prove to you that it, in fact, would have made Defendants' infringing sales.

## 6.7    <u>LOST PROFITS – CAPACITY</u>

The third factor asks whether Natera had the manufacturing and marketing ability to actually make the sales it allegedly lost due to Defendants' infringement.  To be awarded lost profits based on additional sales of Natera's products that Natera claims it would have made, Natera must prove that it was more likely than not that they would have had the capacity to manufacture enough products to make those additional sales, as well as the marketing capability to make those additional sales.

## 6.8     LOST PROFITS – AMOUNT OF PROFIT

The fourth factor asks the amount of profit that Natera would have made if Defendants had not infringed. Natera may calculate the amount of its lost profits by calculating its lost sales and subtracting any additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs. Fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from a patent holder's lost revenue. The amount of lost profits need not be proved with absolute or mathematical precision, however, it must be proved with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

## 6.9    REASONABLE ROYALTY

Natera is also seeking damages in the amount of a reasonable royalty.

If you find that Natera has not proven its claim for lost profits, or if you find that Natera has proven its claim for lost profits for only a portion of the infringing sales, then you must consider the issue of a reasonable royalty.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the royalty payment that would have resulted from a hypothetical negotiation between the patent holder and the alleged infringer just before the infringement began. The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing methods have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. The royalty rate must reflect the value attributable to the infringing features of the method, and no more.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been if they had entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties to the hypothetical negotiation believed the patent was valid and infringed and that both parties were willing to enter into an agreement just before the infringement began.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.

### 6.10    REASONABLE ROYALTY – FACTORS

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors in addition to any other evidence presented by the parties on the economic value of the patent:

1.    Any royalties received by the Natera for licensing others under the patents-in-suit, proving or tending to prove an established royalty;

2.    The rates paid by Defendants to license other patents comparable to the patents-in-suit;

3.    The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold;

4.    Natera's established policy and marketing program to maintain its patent exclusivity and right to exclude others from using the patented inventions by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity;

5.    The commercial relationship between Natera and Defendants, such as whether or not they are competitors in the same territory in the same line of business;

6.    The effect of selling the patented product in promoting sales of other products of the Defendants, the existing value of the invention to Natera as a generator of sales of its non-patented items, and the extent of such collateral sales;

7.    The duration of the patents-in-suit and the term of the hypothetical license;

8.    The established profitability of the products made under the patents-in-suit, their commercial success, and their popularity;

9.      The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for working out similar results;

10.     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Natera, and the benefits to those who have used the invention;

11.     The extent to which Defendants have made use of the invention, and any evidence probative of the value of that use;

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.     The portion of the realizable profit that should be credited to the patented invention itself as opposed to unpatented features, business risks, or significant features or improvements added by Defendants;

14.     The opinion testimony of qualified experts; and

15.     The amount that Natera and Defendants would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept.

### 6.11   REASONABLE ROYALTY – USE OF COMPARABLE LICENSES

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question, or for rights to similar technologies. An agreement need not be perfectly comparable to a hypothetical license that would be negotiated between Natera and Defendants in order for you to consider it. However, if you choose to rely upon evidence from any other agreements, you must account for any differences between those agreements and the hypothetically negotiated license between Natera and Defendants, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

## 7.   DELIBERATION AND VERDICT

### 7.1   INTRODUCTION

I have concluded my instructions on the law.  All of the instructions I gave you previously today – as well as earlier this week – still apply, and you will have a copy of the instructions with you in the jury room.

Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

58

## 7.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you.  I will review that document with you in a moment.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and my deputy will read aloud your verdict.

And I will remind you that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

### 7.3    DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not given any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess. You may not read or listen to any news about the case in a newspaper, online, through any news apps, on the radio, through any social media, in blogs, or on television during the evening recess.

### 7.4    SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

## 7.5   COURT HAS NO OPINION

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

Finally, if I have read any of these instructions inconsistently with the written text, you are to rely on the written instructions in your deliberations.